Filed 9/17/21  P. v. Brunsvik CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C093014 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F2009) |
| v. | |
| NICHOLAS CRAIG BRUNSVIK, | |
| Defendant and Appellant. | |

Defendant Nicholas Craig Brunsvik pled no contest to receiving stolen property and resisting a peace officer and admitted a prior prison term under Penal Code[1] section 667.5, subdivision (b).  The plea agreement included a stipulated sentence of four years, split into six months in county jail, followed by a three-year, six-month term of mandatory supervision.  Defendant ultimately violated the terms of his mandatory

---

[1]     Undesignated statutory references are to the Penal Code.

1

supervision and the court ordered him to serve the remainder of the term in custody. Defendant now appeals asserting the one-year prior prison term enhancement must be stricken because of recently adopted Senate Bill No. 136 (2019-2020 Reg. Sess.). Under the circumstances of this case, we will modify the judgment to strike the enhancement.

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with one count of receiving stolen property and two counts of misdemeanor resisting a peace officer. The prosecution also alleged defendant had served a prior prison term for a 2012 conviction for evading a peace officer. Defendant pled no contest to the receiving stolen property count and one resisting a peace officer count and admitted the prior prison term allegation. The court dismissed the outstanding count, along with two other misdemeanor cases, consistent with the plea agreement.

At the sentencing hearing, in December 2018, the court imposed the agreed-upon sentence of four years, including the upper term of three years for the receiving stolen property count, one year for the prior prison term enhancement, and 180 days to run concurrently, for the resisting a peace officer count. The four-year term was split into a six-month term in custody and three years six months on mandatory supervision. Defendant did not file a notice of appeal.

Defendant eventually admitted two violations of the terms of his mandatory supervision. In October 2020, the court remanded defendant into custody and ordered defendant to serve the remainder of his sentence in custody. Defendant then filed a notice of appeal.

## DISCUSSION

Defendant argues Senate Bill No. 136 applies retroactively to him and asserts the prior prison term enhancement must be stricken. The People disagree, both with respect to the retroactivity of Senate Bill No. 136 and to the proposed remedy. We agree Senate

2

Bill No. 136 applies retroactively and find it appropriate in this case to strike the enhancement.

I

*Retroactivity*

Senate Bill No. 136 was signed by the Governor on October 8, 2019, and, effective January 1, 2020, amended section 667.5, subdivision (b) to eliminate the one-year prior prison term enhancement for most prior convictions. (Stats. 2019, ch. 590, § 1.) An exception, not applicable here, is made for a qualifying prior conviction of a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b).

The People assert Senate Bill No. 136 should not be applied retroactively to defendant's case because defendant's sentence included a mandatory supervision component. In their view, defendant's sentence was imposed on the date of his sentencing hearing and the judgment in the case became final after he failed to appeal at that point. Thus, they conclude, the judgment in defendant's case was final before Senate Bill No. 136 took effect, and its ameliorative benefits should not extend to defendant under *In re Estrada* (1965) 63 Cal.2d 740.

Our Supreme Court recently considered a similar issue in *People v. Esquivel* (2021) 11 Cal.5th 671. In *Esquivel*, the defendant pled no contest to a felony and admitted two prior prison terms. (*Id.* at p. 673.) The trial court suspended execution of a state prison sentence and placed the defendant on probation, the terms of which defendant proceeded to violate. (*Ibid.*) The court then ordered the sentence into effect. (*Ibid.*) Defendant appealed and, while the appeal was pending, the Legislature passed Senate Bill No. 136. (*Ibid.*) Considering whether *In re Estrada* extended the benefits of Senate Bill No. 136 to the defendant, despite the fact he had not appealed the original order placing him on probation, our Supreme Court observed the "case was not final" at that point "because the 'criminal prosecution or proceeding' brought against defendant was

3

not complete when the ameliorative legislation at issue took effect. [Citation.] Defendant had not exhausted direct review of the order causing his carceral punishment to take effect. The time for him to seek that review had not expired. And he had not successfully completed probation." (*Id.* at p. 678.) Thus, our Supreme Court concluded, "legislation ameliorating punishment presumptively applies to suspended execution cases pending on appeal from an order causing a previously imposed sentence to take effect." (*Id.* at p. 681.)

We see no reason why defendant's situation should be treated differently in this respect from the defendant in *Esquivel*. Although defendant was placed on mandatory supervision, rather than probation, defendant "had not exhausted direct review of the order causing his carceral punishment to take effect" when his sentence was initially imposed. (*People v. Esquivel*, *supra*, 11 Cal.5th at p. 678.) As the People acknowledge, the appellate cases considering *In re Estrada*'s applicability to cases involving mandatory supervision have concluded that the imposition of a split sentence is not a "final judgment" under *In re Estrada*. (*People v. Lopez* (2020) 57 Cal.App.5th 409, 412 ["a defendant who remains on mandatory supervision is not yet subject to a final judgment"]; *People v. Martinez* (2020) 54 Cal.App.5th 885, 889 ["a split sentence consisting of a county jail term followed by a period of mandatory supervision does not automatically become a final judgment of conviction for purposes of *Estrada* retroactivity when the time to appeal from the imposition of that sentence expires"]; *People v. Conatser* (2020) 53 Cal.App.5th 1223, 1229 [same].)

None of the cases the People cite for the proposition that mandatory supervision is different than probation involved the application of *Estrada* retroactivity. And, the People's argument distinguishing defendant's sentence from a probation sentence, which asserts defendant's sentence was imposed at sentencing, rather than suspended, as it typically would be for probation, relies on a distinction between suspended imposition and suspended execution of sentence that was rejected by *Esquivel*, and has been rejected

4

by other appellate courts considering *Estrada*'s applicability. (*People v. Esquivel*, *supra*, 11 Cal.5th at p. 678; see also *People v. Andahl* (2021) 62 Cal.App.5th 203, 209-210, review granted June 16, 2021, S268336; *People v. Martinez*, *supra*, 54 Cal.App.5th at p. 893.) Thus, we conclude the benefits of Senate Bill No. 136 extend to defendant.

II

*Remedy*

As to the remedy, we observe appellate courts are currently split on how to retroactively apply Senate Bill No. 136 to plea agreements with stipulated sentences that include prior prison term enhancements. (See, e.g., *People v. France* (2020) 58 Cal.App.5th 714, 730, review granted Feb. 24, 2021, S266771 [appellate court striking unauthorized prior prison term enhancement; prosecution may not withdraw from plea agreement]; *People v. Hernandez* (2020) 55 Cal.App.5th 942, 944, review granted Jan. 27, 2021, S265739 [allowing the People to withdraw from plea agreement when prior prison term enhancement is stricken; no cap as to any subsequent sentence]; *People v. Joaquin* (2020) 58 Cal.App.5th 173, 175, review granted Feb. 24, 2021, S266594 [Senate Bill No. 136 renders plea agreement unenforceable; "[o]n remand, the parties may enter into a new plea agreement, but, if they do, the trial court may not impose a longer sentence than that in the original agreement"].) Our Supreme Court is now poised to provide clarification. In the meantime, we believe it is appropriate to strike the enhancement at issue here.

As a threshold matter, the parties disagree about whether the remedy in this case is dictated by *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). In *Stamps*, our Supreme Court considered the applicability of Senate Bill No. 1393 (2017-2018 Reg. Sess.), which allowed a trial court to dismiss a serious felony enhancement in furtherance of justice, as provided under section 1385, to a plea agreement that included the admission of a serious felony enhancement. (*Stamps*, *supra*, at p. 693.) Our Supreme Court concluded the remedy should be to remand the matter, give defendant an opportunity to seek relief

5

under Senate Bill No. 1393, and allow the prosecution the opportunity to withdraw from the plea agreement if the trial court "indicates an inclination to exercise its discretion under section 1385." (*Stamps*, at p. 707.)

The court reasoned, "Senate Bill [No.] 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements. Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision. Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Stamps*, *supra*, 9 Cal.5th at p. 702.) Thus, "to allow the court to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement. That Senate Bill [No.] 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Id*. at p. 704.)

Unlike the application of Senate Bill No. 1393 in *Stamps*, however, Senate Bill No. 136 "does not involve any unilateral action by the trial court." (*People v. Andahl*, *supra*, 62 Cal.App.5th at p. 214.) Rather, " 'under Senate Bill [No.] 136, the Legislature itself has mandated the striking of affected prison priors . . . . Thus, Senate Bill [No.] 136 does not involve *Stamps*'s repeated and carefully phrased concern with the "long-standing law that a *court* cannot *unilaterally* modify an agreed-upon term by striking portions of it under section 1385." ' " (*Ibid.*) "When a case is remanded under Senate Bill [No.] 1393, the trial court can choose not to strike the enhancement and preserve the plea agreement, but a trial court applying Senate Bill [No.] 136 has no such option because an enhancement 'cannot stand . . . when it rests upon conduct that is no longer

sanctioned.' " (*Id.* at p. 215.) Nothing prevents the Legislature from modifying a plea agreement in such a way. (See *Doe v. Harris* (2013) 57 Cal.4th 64, 73 ["the general rule in California is that a plea agreement is ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy" ' "]; *People v. Knowles* (1950) 35 Cal.2d 175, 181 ["[s]ubject to the constitutional prohibition of cruel and unusual punishment, the Legislature may define and punish offenses as it sees fit"].)

The Legislature has thus effectively made defendant's prior prison term enhancement an unauthorized sentence, as it "could not lawfully be imposed under any circumstance," and it must be stricken. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *In re Andrews* (1976) 18 Cal.3d 208, 212 ["A court is without authority to impose a sentence not prescribed by statute"]; *People v. Harvey* (1980) 112 Cal.App.3d 132, 139 ["in computing one's sentence under a plea bargain, even though agreed to by the parties, the court may not give effect to an enhancement unauthorized by law"].) The Legislature was presumptively aware that Senate Bill No. 136 would retroactively render sentences in nonfinal cases unauthorized, and that courts must strike an unauthorized sentence, even with respect to plea agreements. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839 [it is a generally accepted principle that in adopting legislation the Legislature is presumed to know existing law]; *Harvey*, at p. 139 ["in computing one's sentence under a plea bargain, even though agreed to by the parties, the court may not give effect to an enhancement unauthorized by law"]; *People v. Collins* (1978) 21 Cal.3d 208, 211-212.) And, the Legislature "may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 991-992.)

Similarly, *Stamps* is inapplicable because it allowed defendant the choice on remand to decide whether to file a motion under Senate Bill No. 1393 to strike the prior serious felony enhancement. (*Stamps*, *supra*, 9 Cal.5th at p. 707.) Here, defendant has

7

no such choice; as explained above, the prior prison term enhancement is now unauthorized and must be stricken. Because of this, applying the *Stamps* remedy to Senate Bill No. 136 would essentially result in the unintentional expansion of the remedy discussed in *People v. Collins*, *supra*, 21 Cal.3d at page 208, which permitted the prosecution to "revive one or more" of the counts it had dismissed before entering into a plea agreement with the defendant, in all cases. (*Id.* at p. 216.) In *Harris v. Superior Court*, our Supreme Court explained *Collins* as follows: "In *Collins* . . . , the defendant was charged with 15 felonies, including burglary, attempted burglary, forcible rape, assault with intent to commit rape, and forcible oral copulation. 'Pursuant to a plea bargain, defendant entered a plea of guilty to one count of oral copulation; in return, the allegations of commission of that crime by means of force and of a prior felony conviction were stricken, and the other 14 counts were dismissed.' [Citation.] After the plea, the Legislature decriminalized nonforcible oral copulation, the crime to which the defendant had pleaded guilty. Nevertheless, the trial court sentenced him to state prison. On appeal, because the conduct to which the defendant pleaded guilty was no longer criminal, this court reversed the conviction. [Citation.] As we summarized, 'A conviction cannot stand on appeal when it rests upon conduct that is no longer sanctioned.' [Citation.]

"We then considered the effect of the reversal on the dismissed counts. We stated the issue as being 'whether the prosecution has been deprived of the benefit of its bargain by the relief granted herein. We conclude that it has and hence the dismissed counts may be restored. [¶] The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. . . . When a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it

8

is his escape from vulnerability to sentence that fundamentally alters the character of the bargain.

" 'Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain -- that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.' [Citation.]

"Regarding remedy, we concluded that the state could revive one or more of the dismissed counts, but the defendant could not receive a more severe punishment than that to which the plea agreement had subjected him." (*Harris v. Superior Court*, *supra*, 1 Cal.5th at pp. 989-990.)

Here, as with *Collins*, the court has no discretion to enforce the plea agreement under its pre-Senate Bill No. 136 terms and the unauthorized sentence must be stricken. But, unlike *Collins*, applying Senate Bill No. 136 here does not eviscerate the plea agreement and deprive the prosecution of its bargain as to defendant's vulnerability to sentence. If the *Stamps* remedy were applied to Senate Bill No. 136 in stipulated sentence cases, however, the result would be the same as in *Collins* -- the prosecution would be able to withdraw from the plea agreement and reinstate all dismissed charges. Our Supreme Court has not expanded the *Collins* remedy to such circumstances.

Thus, we conclude *Stamps* is not controlling with respect to the remedy in defendant's case. The Legislature unilaterally modified the plea agreement when it enacted Senate Bill No. 136 without giving the prosecution the option to withdraw from

the agreement. The retroactive application of Senate Bill No. 136 does not eviscerate the plea agreement in this case, and we will thus strike the prior prison term enhancement.[2]

DISPOSITION

The one-year enhancement imposed under section 667.5, subdivision (b) is stricken. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Shasta County Sheriff's Office. As modified, the judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Renner, J.

---

**2** The parties dispute whether, assuming defendant is resentenced, the trial court can impose a higher sentence than defendant originally received. Because our remedy does not require resentencing, we need not reach this argument.

10